******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

GARY RYDER *v*. JPMORGAN CHASE BANK,
NATIONAL ASSOCIATION
(AC 46128)

Bright, C. J., and Alvord and Cradle, Js.

*Syllabus*

The plaintiff appealed from the judgment of the trial court, rendered after
a jury trial, for the defendant bank. Following certain litigation over
two mortgages on the plaintiff's property, the parties executed a settle-
ment and release agreement and a loan modification agreement. After
the defendant commenced a foreclosure action against the plaintiff,
claiming that he had defaulted on the modified loan, the plaintiff initiated
the underlying action against the defendant, claiming, inter alia, breach
of the loan modification agreement and settlement agreement, to which
the defendant asserted the special defense of setoff. The jury returned
its verdict, pursuant to which it found for the plaintiff on the count of his
complaint alleging breach of the settlement agreement, and it awarded
damages in the amount of $350,000. The jury also found that the defen-
dant had proven that, due to the plaintiff's ongoing default in his loan
obligations, the plaintiff was indebted to the defendant for more than
$4 million. The jury subtracted the amount of the indebtedness from
the damages award on the interrogatories form. The jury, however,
returned a verdict for the plaintiff. Following clarifying instructions from
the court, the jury returned a defendant's verdict on all counts of the
complaint consistent with its responses to the interrogatories. The plain-
tiff filed various postverdict motions, which the court denied. *Held*:

1. This court declined to review the plaintiff's claims that the trial court
   improperly denied his motions to set aside the verdict and for judgment
   notwithstanding the verdict as those claims were unpreserved: the plain-
   tiff never sought to challenge the legal sufficiency of the defendant's
   setoff defense by filing a motion to strike in accordance with the rules
   of practice and failed to distinctly raise his claim that the setoff defense
   was invalid prior to the submission of the case to the jury; moreover,
   the plaintiff failed to preserve his claim that the defendant's material
   breach of the settlement agreement necessarily discharged his obliga-
   tions under the loan modification agreement by failing to submit a
   written request to charge or proposed jury interrogatories on the issue
   and by agreeing to the submission of interrogatories to the jury that
   plainly allowed it to find both that the defendant materially breached
   the settlement agreement and that the plaintiff was indebted to the
   defendant pursuant to his loan obligations; furthermore, because the
   plaintiff's trial counsel neither objected to questions about the debt
   posed by the defendant's counsel nor moved to strike the plaintiff's

responses as to the amount of the debt, his claim that the court improperly concluded that his testimony as to the amount he owed the defendant was a judicial admission was unreviewable.

2. This court declined to review the plaintiff's unpreserved claim that the trial court improperly precluded him from presenting evidence relevant to the damages he incurred after he transferred title to the property to a trust; the record did not reflect that the plaintiff distinctly raised this claim in opposition to the defendant's motion in limine seeking to preclude the plaintiff from presenting evidence of such damages or at any other point during the trial.

3. The trial court did not abuse its discretion in denying the plaintiff's motions to set aside the verdict as inadequate and for additur; because there was a reasonable basis in the evidence for the jury's verdict and there was no evidence of mistakes or partiality, this court deferred to the jury's judgment.

4. The plaintiff could not prevail on his claim that the trial court improperly denied his postverdict motion to consolidate the underlying action with the defendant's related foreclosure action against him: after the defendant initiated the foreclosure action, the plaintiff initiated the underlying action instead of asserting his breach of contract claims in a counterclaim in the foreclosure action; moreover, the court properly considered the belated nature of the plaintiff's motion to consolidate as well as the futility of doing so after a verdict had been returned and after the plaintiff's motion for a new trial had been denied.

Argued March 12—officially released August 6, 2024

*Procedural History*

Action to recover damages for, inter alia, breach of contract, and for other relief, brought to the Superior Court in the judicial district of Stamford-Norwalk, and tried to the jury before *Clark, J.*; verdict for the defendant; thereafter, the court *Clark, J.*, denied the plaintiff's motions to set aside the verdict, for judgment notwithstanding the verdict, and for additur; judgment for the defendant; subsequently, the court, *Genuario, J.*, denied the plaintiff's motion to consolidate, and the plaintiff appealed to this court. *Affirmed.*

*Ridgely Whitmore Brown*, for the appellant (plaintiff).

*Brian D. Rich*, for the appellee (defendant).

*Opinion*

BRIGHT, C. J. The plaintiff, Gary Ryder, appeals from the judgment of the trial court, rendered after a jury trial, in favor of the defendant, JPMorgan Chase Bank, National Association. On appeal, the plaintiff claims that the court improperly (1) denied his motions to set aside the jury's verdict and for judgment notwithstanding the verdict "to the extent that the verdict awarded no damages to the plaintiff," (2) precluded the plaintiff from presenting evidence relevant to the damages incurred after November, 2014, when he transferred title to the property to a trust, (3) denied his motions to set aside the verdict as inadequate and for additur, and (4) denied his postjudgment motion to consolidate the underlying action with the defendant's related foreclosure action against the plaintiff. We disagree and, accordingly, affirm the judgment of the trial court.

The following facts, as the jury reasonably could have found them, and procedural history are relevant to the plaintiff's claims on appeal. In January, 2003, the plaintiff executed a mortgage on his property in Greenwich (property) in favor of Washington Mutual Bank, FA (Washington Mutual) to secure an adjustable rate note in the principal amount of $2.45 million (first mortgage). In March, 2003, the plaintiff executed a mortgage in favor of the defendant to secure future advances pursuant to a home equity line of credit agreement and disclosure statement with a $300,000 limit (second mortgage). Thereafter, the plaintiff filed two lawsuits related to the loans, one against Washington Mutual in the United States District Court for the District of Connecticut and the other against the defendant in the United States District Court for the District of Columbia. In the Connecticut action, Washington Mutual filed a counterclaim to foreclose the first mortgage. The defendant subsequently acquired the first mortgage from Washington

Mutual and was substituted as the defendant and counterclaim plaintiff in the Connecticut action.

In November, 2011, the parties executed a settlement and release agreement along with a loan modification agreement. Pursuant to the settlement agreement, the parties released all of their respective claims in the federal actions, the plaintiff agreed to withdraw both actions by December 15, 2011, and the defendant agreed to release the second mortgage on the property. Pursuant to the loan modification, the maturity date of the note is November 1, 2051, the new principal balance was $2.9 million, with interest beginning to accrue as of November 1, 2011, at the rate of 1 percent until November 1, 2014, when the rate increased to 5.1 percent (modified loan). Although the plaintiff performed his obligations under the settlement agreement, the defendant did not release the second mortgage on the plaintiff's property until April 21, 2014. On November 3, 2014, the plaintiff conveyed the property to SFK Trust, LTD (SFK Trust) by virtue of a deed recorded in the Greenwich land records.

In October, 2018, the defendant commenced a foreclosure action against the plaintiff, claiming that he had defaulted on the modified loan. In February, 2019, the plaintiff initiated the underlying action against the defendant. In the operative seven count complaint, the third amended complaint, the plaintiff alleged that the defendant: (1) breached the loan modification agreement by failing to pay the real estate taxes to the town of Greenwich in a timely manner (first count); (2) breached the settlement agreement by (a) failing to release the lis pendens in a timely manner (second count), (b) failing to release the second mortgage until April 21, 2014 (third count), (c) attempting to enforce the second mortgage in violation of General Statutes § 36a-648 (fourth count), (d) improperly increasing his monthly mortgage payment, principal, interest, and

taxes (fifth count), and (e) claiming that his outstanding debt was greater than $2.9 million (sixth count); and (3) improperly induced him to execute the settlement agreement by falsely representing that his outstanding debt was $2.9 million even though it since has claimed that his outstanding debt is greater than $2.9 million (seventh count).

The defendant denied the material allegations in the complaint and asserted, as a special defense, that "[a]ny and all damages to which the plaintiff would otherwise be entitled must be offset by the debt owed to the defendant related to the ongoing default in his loan obligations." The plaintiff filed a reply in which he, inter alia, denied the allegations in the defendant's special defense of setoff.[1] The defendant subsequently filed a motion in limine, seeking to preclude evidence of any damages claimed by the plaintiff after he conveyed the subject property to the SFK Trust in November, 2014, as he was no longer the owner of the subject property. The court granted the motion in limine, without prejudice, on May 20, 2022.

Thereafter, the case was tried to a jury over the course of several days in June and July, 2022, with the court, *Clark, J.,* presiding. At trial, the plaintiff was represented by Attorneys Richard P. Silverstein and John Ferranti. On June 28, 2022, the first day of evidence, the court addressed certain preliminary matters, indicating that, if necessary, it would revisit its ruling concerning the time period for which evidence of damages could

---

[1] We note that the parties used "setoff" and "offset" interchangeably in their pleadings and during the proceedings before the trial court in reference to the defendant's special defense. Although we refer to that defense as a "setoff" in this opinion, there is no meaningful distinction between the two terms. See, e.g., *Citizens Bank of Maryland* v. *Strumpf*, 516 U.S. 16, 18, 116 S. Ct. 286, 133 L. Ed. 2d 258 (1995) ("[t]he right of setoff (also called offset) allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding the absurdity of making A pay B when B owes A" (internal quotation marks omitted)).

be introduced. The court also noted the defendant's request to charge the jury as to its setoff defense and stated that, at that time, it did not believe that it would be appropriate to instruct the jury as to the defendant's claimed setoff, as the foreclosure case was a separate action, and it could be prejudicial to combine the claims made therein with those in the plaintiff's case. The plaintiff's counsel agreed.

Despite the court's initial concerns, however, it permitted the plaintiff's alleged default on the modified loan and the issue of setoff to be raised at trial. During trial, the plaintiff testified that he stopped making payments as required under the loan modification agreement in 2014 because he believed "there was no agreement anymore because it had been breached in so many different ways . . . ." Nevertheless, on cross-examination, he admitted that he owed the defendant approximately $3 million for the principal amount of the loan and for the property taxes that the defendant paid to the town of Greenwich.

At the conclusion of the plaintiff's case on July 1, 2022, which was a Friday, the defendant moved for a directed verdict, arguing, among other things, that the plaintiff's admission of his indebtedness had established the defendant's setoff defense. The trial court deferred ruling on the motion for a directed verdict and briefly discussed the charging conference scheduled for the following week. The court invited counsel to submit any revised requests to charge or proposed verdict forms, noting that the "plaintiff's request was very basic, [while the] defense's request was robust. And, obviously, now we have some evidence." The court issued a written order that same day, which stated: "Consistent with the discussion on the record during the trial on July 1, 2022 . . . [t]he parties shall review the working draft of the court's jury charge that was presented to counsel at the beginning of evidence and

which has since been emailed to counsel by caseflow. Counsel shall submit any proposed edits to the draft charge by Tuesday, July 5, 2022, at 1:00 p.m. . . . The parties shall be prepared to engage in a charging conference on Wednesday, July 6, 2022, with the court."

At the beginning of the day on July 6, 2022, the court explained that the parties had provided the court with proposed edits to the charge, and that the court would defer any ruling on the defendant's motion for a directed verdict until the conclusion of the case or after a verdict. Thereafter, the defendant presented a single witness, and the plaintiff offered no rebuttal.

After releasing the jury, the court held a charging conference. After reviewing several of the parties' suggested edits, the following exchange occurred between the court and the parties' counsel:

"The Court: I think that goes through all of the edits. I know we didn't solve all of them. But you noted, Attorney Ferranti, you thought you might have some other—a couple other—some other points that we might not have touched on there.

"[Attorney Ferranti]: No, I—we touched on them, thank you—

"The Court: Okay.

"[Attorney Ferranti]: —for asking, Your Honor.

"[The Defendant's Counsel]: Your Honor, I don't believe we addressed the offset edit. . . .

"The Court: Oh, the offset, I'm sorry. So, the offset, yes, there was an effort to add in, I . . . think given the evidence that some instruction on the offset is appropriate. . . . I took the liberty of taking the language proffered by [the defendant] and making some softening. . . . So, I'll pass . . . that out to . . . counsel. I do think given the evidence that the special

defense is appropriate and that the offset—charge as to the offset is appropriate . . . . So, I . . . think it's something like that and then, you know, it's a matter of whether the jury finds that there is evidence.

"[Attorney Silverstein]: Isn't this a subject of different litigation currently pending?

"The Court: I'm sorry?

"[Attorney Silverstein]: Isn't that three million the subject of litigation currently pending in this court-house?

"The Court: The—I think there certainly is an active foreclosure case.

"[Attorney Silverstein]: Right, which claims that my client is three million in arrears. How does that, which is a separate and distinct action, get to be argued in this court and then again in the other case?

"The Court: Well, there's a variety of ways that it can, and it still could be, and either way, could end up being relevant to that case. But I think in this case, there is a—it is a special defense that was claimed. There is evidence associated with a potential offset and there-fore, I believe, it's appropriate for the jury to consider whether or not one should apply to any verdict that they would issue. There is no counterclaim in this case, so we don't have the foreclosure case, and this case is one claim. So, what the offset would potentially do here could be, depending upon whatever damages there are, it could reduce or eliminate them for sure, but I don't think that forecloses any action or defenses associated with the foreclosure action.

"[Attorney Ferranti]: Your Honor, I do have—

"The Court: Yeah.

"[Attorney Ferranti]: —concerns on the fourth paragraph—I'm sorry, the third paragraph, halfway down. 'Importantly, before you consider any setoff that the defendant may be entitled to, the plaintiff must prove all of his damages claims by a preponderance of the evidence.' It seems a little confusing. It seems to me somebody might read this—the jury might read this and say, he's gotta prove count one, count two, count three, count four.

"The Court: Uh-huh.

"[Attorney Ferranti]: Certainly, the plaintiff must prove damages. I'm not sure about 'all [of] his damages claims.' They might read that as all the counts.

"The Court: Right. Well, part of the practical nature of this, which goes to the verdict forms, which is how this is—where does this appear and how does it apply, and is it to the macro or is it to each count. You know, because there could be certainly some confusion in the calculation—the question.

"[Attorney Silverstein]: Your Honor, it would seem to me that if you're going to allow them, and I know they [pleaded] offsets setoff, to have this charge, again, I'm wondering why it is that what my client gave up is not damages. It's as if you're—you're removing what he did from the contract and focusing only on what [the defendant's] responsibilities were. My client under the contract had responsibilities that he fulfilled to his detriment. In other words, he couldn't revive those lawsuits, but yet you're telling us that those aren't damages. I just can't understand the logic of how a contract where one party—

"The Court: Okay. Attorney Silverstein, we're not going to keep arguing that same point. This—to the extent—let's assume you can't understand, okay.

"[Attorney Silverstein]: I can't understand it.

"The Court: And we'll just move on. The issue of the offset in this case, among many other pieces of evidence, comes from the fact that there was an obligation on your client to pay the mortgage and apparently from his testimony and corroboration, there—payments have not been made since 2014. So, if he hasn't made the payments, and I understand his position is there was no longer a contract, which sort of begs the question of, well then how are you seeking to enforce a contract, but I'll leave that aside for the moment. How is that not a potential offset? So, he didn't do—you said he did everything he was supposed to do. The evidence does not appear to be so in that regard. So, if he didn't pay the mortgage, and how is that not a potential offset to his damages attempting to assert the damages associated with the enforcement of the mortgage.

"[Attorney Silverstein]: Can I answer that?

"The Court: So, that has nothing to do with the foreclosure of the prior settlement agreement or evidence that doesn't exist in this case of the negotiation, what the parties actually valued it as, et cetera. It goes to, from alleged breach forward, what were the actions, and are there any offsets to those actions, which in this case, a lack of payment of a mortgage for eight years strikes me as something the jury could value.

"[Attorney Silverstein]: . . . [W]ell, then what Your Honor is saying is that when my client became aware of the breach, that he still had to fulfill all the obligations even in light of the fact that [he] was aware that they had breached the contract. Once he becomes aware of that, from my understanding of contracts law, years ago, that's just not the case. His . . . responsibilities don't go on under that breached contract forever. It just—that's not how it works. Once he—

"The Court: Okay, thank you.

"[The Defendant's Counsel]: Your Honor, even if that legal interpretation or proposition was correct—

"[Attorney Silverstein]: It is correct.

"[The Defendant's Counsel]: —[The plaintiff] sat on the stand and said he owes [the defendant] at least three million dollars. So, even if Attorney Silverstein's comments are legally correct, which I think there's some—I don't think they're correct. [The plaintiff] has testified, and the jury has heard, that he owes [the defendant] at least three million dollars, plus, by the way, the unpaid taxes, which I didn't even include in my draft language here. So, that's the evidence before the jury, and I understand Your Honor's softening of my proposed language and the reasons behind it. But the plaintiff in this case testified quite explicitly that he owes the defendant at least three million dollars. So, I think there's a compelling argument to be made that the jury should be affirmatively charged that it must offset the damages based on his testimony, which Your Honor's revised draft is a little short of that, but that's what I believe is appropriate in this case based on his undisputed testimony.

"The Court: Anything further, Attorney Ferranti?

"[Attorney Ferranti]: Not on that subject. Thank you, Your Honor." The court then briefly discussed the interrogatories and verdict form before adjourning for the day.

The next morning, the court began by noting that it had given counsel updated copies of the draft verdict forms and the jury charge and that they had discussed the jury interrogatories prior to opening court. Following closing arguments, the court took a recess before reviewing the verdict form, interrogatories and charge with the parties. At that time, Attorney Ferranti commented on the interrogatories pertaining to the setoff

defense as to the first count of the plaintiff's complaint, which provided: "Subtract the amount entered in response to question 6 ['What is the amount plaintiff owes the defendant due to his ongoing default in his loan obligations?'] from the amount entered in response to question 4 ['Calculate the total amount of damages, if any, entered in response to 3a-3d above']. If the difference is a positive number, enter it below, and you may enter a verdict for the plaintiff in this amount. If the difference is zero or a negative number, you must enter a verdict in favor of the Defendant." (Emphasis omitted.) Attorney Ferranti, reading from the interrogatories, stated: "If the difference is zero, you must enter a verdict . . . in favor of the defendant, is fine. I do believe a negative number would still be valid because it would be a setoff even though it doesn't [rise] above what is owed, that number should be subtracted from what is owed. So, I would take exception to that. I think it should [read], '[I]f the difference is zero, then you must enter a verdict in favor of the defendant.' If not, I think we're stuck with what that number is." The court acknowledged that point and proceeded to bring in the jury.

The court charged the jury regarding the plaintiff's claims and the defendant's special defense of setoff. The court provided the agreed upon interrogatories that required the jury to answer whether the defendant had proven that the plaintiff owed it moneys "due to his ongoing default in his loan obligations," and, if so, to determine the amount of that debt. The interrogatories also directed the jury to subtract the debt amount from any award of damages to the plaintiff and, if the difference was zero or a negative number, to enter a verdict in favor of the defendant.

As to the defendant's setoff special defense, the court instructed the jury as follows: "To the extent you find that the plaintiff has proven liability and damages for

any of his claims, you must then consider whether any amount to which you have decided the plaintiff is entitled must be offset by any debt that you may [find] is owed to [the defendant] related to the plaintiff's ongoing loan obligations. As I mentioned earlier, [the defendant] has affirmatively asserted this as a special defense. As I have mentioned, [the defendant] has the burden of proving its special defense by a fair preponderance of the evidence. The plaintiff does not have to disprove it. In Connecticut, a setoff may be legal in nature. A party may be entitled to a setoff to enforce the simple but clear natural equity in a given case. In this case, [the defendant] is claiming a setoff relating to [the plaintiff's] alleged ongoing default of his loan obligations, which are the subject of this case.

"As applied to here, if you determine that [the defendant] is entitled to recover any moneys unpaid by [the plaintiff], but due and owing to [the defendant], then any possible award of damages that you feel has been sufficiently proven by the plaintiff may be reduced by this amount. Importantly, before you consider any setoff that the defendant may be entitled to, the plaintiff must prove all of his damages claims by a preponderance of the evidence. Once you have determined, what, if any damages have been sufficiently established, you must determine whether the defendant is entitled to a setoff which will reduce any potential award of damages to the plaintiff. . . .

"In this case you have heard other evidence related to the mortgage payment status and the taxes paid on the property in question. It is for you to determine the ultimate value of any setoff, if applicable, and then to apply such setoff [in] the amount that you find is proven to exist in this case. Therefore, to the extent that you enter any verdict in favor of the plaintiff, I direct you to offset such amount by the amount, if any, that you

find applicable to this case based on the facts as you find them."

As to the plaintiff's damages, the court instructed the jury in relevant part that, "if you determine that the plaintiff has proven both liability and damages by a preponderance of the evidence in this action, then you may only award amounts for damages incurred related to the property while [the plaintiff] was actually in title of the property, i.e., before November 3, 2014, and may not award damages for any alternate time period."

After the jury exited the courtroom, the court inquired of counsel, "Exceptions, objections, concerns?" Although the defendant's counsel took some exceptions to the charge, Attorney Ferranti simply responded, "No, Your Honor. Thank you."

On July 11, 2022, the jury returned a verdict along with answers to the interrogatories, which the courtroom clerk read for the record. Pursuant to the interrogatories, the jury found in favor of the plaintiff on the third count of his complaint but for the defendant on the remaining counts. Specifically, the jury found that the defendant had breached the settlement agreement by failing to release the second mortgage until April, 2014, and that the plaintiff had proven that the defendant's material breach had caused him to suffer damages in the amount of $350,000 due to the inability to refinance the loan and the loss of a potential sale of the property. The jury also found that the defendant had proven that, due to his ongoing default in his loan obligations, the plaintiff is indebted to the defendant in the amount of $4,023,338.21 "per [Defendant's] Exhibit GG," which was a payoff statement for the plaintiff's loan obligations under the modified loan agreement, and that it had subtracted that amount from the $350,000 damages award on the interrogatories form. On the verdict form, however, the jury found for the

plaintiff in the amount of $350,000. After the clerk read the verdict and the answers to the jury interrogatories, all of which the jury confirmed, the following exchange occurred between the court and the jury foreperson:

"The Court: . . . I just want to note, I did not hear when the clerk was reading the interrogatories the response to number seven in the damages. . . . I did not hear number seven, it says subtract the amount entered in response to question six from the amount entered in response to question four. If the difference is a positive number, enter it below. And . . . you may enter a verdict for the plaintiff in this amount. If the difference is zero or a negative number, you must enter a verdict in favor of the defendant. And there is an amount there and that amount is negative [$3,673,338.21]. I did not hear that amount referenced when you read the interrogatory previously, Mr. Clerk, and I just want to ask the jury, did you answer number seven in section three to that amount, that the negative number of [$3,673,338.21]?

"[The Jury Foreperson]: We did enter that amount.

"The Court: Thank you. And with that confirmation, what I'd like to do is just ask you to just step into the jury room for a minute and so I can clarify this with counsel and then just bring you right back out. Okay. So, it'll just be a minute, folks."

After the jury exited the courtroom, the court discussed the apparent inconsistency between the clear instructions on the interrogatories and the verdict form with respect to count three. Specifically, the court's review of the forms determined that the jury had failed to properly follow the instruction for the third count. As such, the acceptance of the verdict was halted, and the court engaged in a discussion on the record with counsel outside the presence of the jury.

"The Court: So the problem . . . is the instruction was if they came to zero or negative to issue that as a defendant['s] verdict. . . . Right, wrong, or indifferent, that was the instruction. So, in their verdict they carried over the [$350,000] and do not appear to have applied the setoff. So, my thought given that is that . . . I need to—and they did not sign the interrogatories, which we have to address too. But I believe I may need to give them an instruction to reread that section and to reconsider what, if any, number they're going to put in the verdict to count three in the verdict form. Because I think their verdict, at this point, is inconsistent with what they wrote in the interrogatories. Attorney Ferranti.

"[Attorney Ferranti]: I don't necessarily disagree, Your Honor.

"The Court: Attorney Rich?

"[The Defendant's Counsel]: I agree entirely, Your Honor. It is inconsistent upon its terms and that it needs to be corrected.

"The Court: Okay. Of course, like every other day in this case, now we approach a witching hour so we're right at one. I think we could accomplish this relatively quickly. I could give them instruction to review it again, to sign it again, to make any correction in the verdict form that needs to be made, and we'll see if the problem is then absent waiving it, [the clerk] has—would have to read it all again.

＊ ＊ ＊

"So why don't we do this, why don't I bring them back, let [them] know that I have to give them—I'm going to give them the quick instruction, and then I want them to take lunch, come back, review, sign off on everything, check their math and so forth, and correct it as needed to the extent [there are] any [changes to]

the verdict form, you just initial where he makes the correction, and we'll take it up at two."

At that point, the jury returned, and the court instructed them as follows. "Based upon the interrogatories you answered and the verdict you gave, there's an inconsistency, and I need you to correct that, however you choose to correct it, and then we'll deal with that. . . . In other words, there's no damages if it's zero or a negative number. That was the instruction. On the verdict, you still had it with a plaintiff's verdict of $350,000, which appears to conflict with the math on the interrogatory which would appear to have been a negative number. So, what I'm going to ask you to do is two things. One, you—to review the interrogatories, specifically, that one, number seven, in—in—in subsection three. And, to the extent that is . . . a positive number and you need—there was some other error you need to correct, make that correction, and then you fill out the verdict form accordingly. To the extent it is . . . a negative number or zero, then there would . . . be a defendant['s] verdict, not the [$350,000]. So, you'd correct that on the jury form, initial that correction, and then hit the right box. . . . So, what I'm going to have the clerk do is give you back the verdict forms, you make whatever corrections you need to based upon that instruction and based upon your findings, write them out, sign the interrogatories. If there's any change to the numbers that currently exist in here, cross it out, initial and put the new number in."

Thereafter, the jury submitted two questions to the court: (1) "As a jury, we are unclear why the verdict flips in favor of the defendant even though we found . . . breaches per the interrogatories" and (2) "[i]f the verdict [on the third count] is changed to be in favor of the defendant, will [the plaintiff] still receive an offset

of the damages amount we indicated in the interrogatories (currently showing $350k), from the amount owed to [the] defendant[?]"

After the court read the jury's questions, Attorney Ferranti stated: "That was the exact reason for my exception to jury interrogatory Roman numeral three, six and seven, and it is further compounded by the jury's confusion. It appears that the [plaintiff] wouldn't be able to realize the jury's verdict finding of $350,000 in damages if there is a verdict for the defendant. While the foreclosure action subject of the mortgage and settlement agreement here is a separate action, I don't believe it is a distinct and separate action, Your Honor. The verdict form finding in favor of the defendant would appear to bar the recovery of the $350,000 as a setoff in the foreclosure action. If the jury finds on one hand for $350,000 in damages but is directed to find in favor of the defendant . . . on the verdict form, then the $350,000 seems to be rendered immaterial. It doesn't make sense to me. Is he going to realize—be able to realize that $350,000 in the foreclosure action? And it would appear by the verdict form that he wouldn't, so that would render their—the damages irrelevant."

The court then allowed the defendant's counsel to respond, and the following exchange occurred:

"[The Defendant's Counsel]: If the defendant has proven its offset defense, then the funds have to be offset against any finding in favor of the plaintiff. That appears to be what the jury has done in response to their interrogatories and, you know, I think that the jury should either be directed accordingly or, in light of . . . some possible confusion the jury is having about following Your Honor's instructions, perhaps, Your Honor needs to issue a ruling yourself.

"The Court: Yeah, I think the two, perhaps, pieces of confusion are, are there damages once you do the offset? And—and I think ultimately—so that's number one.

And then number two, if an offset brings it to zero or a negative number, does that necessarily mean it's a defendant's verdict? In other words, we started the interrogatories and found the plaintiff's verdict and as we worked all the way through we get to a defendant's verdict, how does . . . that work is the way I'm kind of reading it. And, I think the answer is that's because I'm telling you how that—that's how it works. So, if you go through the interrogatories and you find that applicable offset that does flip it, essentially, to there being no award of damages and thus a defendant's verdict.

"So, I understand your exception to the, you know, how is this, but I think there is a distinction to be drawn that's been drawn a number of times in this [case], but this is this case.

"[Attorney Ferranti]: Correct.

"The Court: So, I don't believe there's—this necessarily is something that [the defendant] can run into the foreclosure [court] and say, hey, we proved an offset of 4 . . . million dollars, give us that in the foreclosure. I mean, [the defendant has] got to prove his foreclosure case. And I think you can't go to the foreclosure case and say, hey, we proved to a jury in a different case that there's a value of $350,000 somewhere here that needs to be credited, you'd have to prove that in the foreclosure case.[2]

---

[2] Although not at issue in the present case, we disagree with the trial court's assessment of the import of the jury's findings regarding the $350,000 in damages. "The concept of setoff allows [parties] that owe each other money to apply their mutual debts against each other, thus avoiding the absurdity of making A pay B when B in fact owes A." (Internal quotation marks omitted.) *Mariculture Products Ltd.* v. *Those Certain Underwriters at Lloyd's of London*, 84 Conn. App. 688, 703, 854 A.2d 1100, cert. denied, 272 Conn. 905, 863 A.2d 698 (2004). Given that the defendant utilized the outstanding mortgage debt as a setoff to negate the plaintiff's award in the present case, that setoff necessarily reduced the amount of the plaintiff's outstanding debt to the defendant by the $350,000 that the defendant did not have to pay to the plaintiff. Although the setoff avoids "the absurdity

"[Attorney Ferranti]: I disagree, but . . . . It is a separate action, but it's not distinct. We are talking about the same mortgage, the same settlement agreement, there should be an—an effect, a realization of the $350,000 in damages in the foreclosure because, again, it's separate, but it's not distinct. We're talking—

"The Court: Right. Either party could have chose—tried to consolidate, that didn't happen in this case. . . .

"[The Defendant's Counsel]: Well, Your Honor, just in response to that comment, I think Attorney Ferranti and I agree to some extent that all of these issues are fertile ground in the foreclosure case. . . . But back to this case, I mean, the interrogatories are very clear, if you find this, you must enter a verdict in the favor of—in favor of the defendant. And based on their responses, that's what they found. And I think the jury has to be directed to find in favor of the defendant based on their responses.

"The Court: Any[thing] further, Mr. Ferranti?

"[Attorney Ferranti]: No, Your Honor. . . .

"The Court: So, just to recap, my intention would be to answer the first question, basically, that, as I instructed you, once you apply the offset, it is possible that . . . any damages found [can], in fact, be entirely offset as appears to be the case here. And, you know, as I told them before, they are to follow my instructions on the law and this is one of those, they have to follow my instructions with respect to how to apply the offset. In number two, my answer would be the verdict has not changed, the verdict is a result of you going all the

---

of making" the defendant pay the plaintiff $350,000 when the plaintiff in fact owes the defendant more than $3 million, the plaintiff still is entitled to realize the practical effect of that setoff, most likely by reducing the amount of the debt due in the foreclosure case, assuming that the doctrines of collateral estoppel or res judicata apply to this issue in that case—a question on which we express no opinion.

way through the interrogatories. And, per my instruction on the law, if you go all the way through the interrogatories and, after they answered number seven, you come to a zero or a negative number, I'm directing you, as a matter of law, to find a defendant's verdict. So, that I would send them back in and direct them to correct their verdict with respect to count number three consistent with my charge.

"[Attorney Ferranti]: With all due respect, I—I disagree with that, Your Honor. I—I would suggest that the court strike answer seven from Roman numeral three on the jury interrogatory and the corresponding and the same question on the verdict form in favor of the defendant.

"[The Defendant's Counsel]: Your Honor, we've already been through this. Of course, we went through the charging conference, we can't change the jury interrogatories now after we've already directed the jury that way. Even if it was merited, I don't think that would be appropriate, but it's not merited in this particular case, there's just simply no basis to do that, to undo what Your Honor has already told the jury it must do in this case.

"[Attorney Ferranti]: Perhaps it's a mistrial on that count.

"The Court: Okay. That motion is denied, and we will complete our process. So, let's bring in the jury." (Footnote added.)

When the jury returned, the court answered the jury's questions as follows: "[I]n this case, there is a special defense of offset. So, I've instructed you how to apply the offset if you found an offset . . . . So, from the clarity standpoint in the interrogatories it walks you through if you find damages then you go to the offset, if you find an offset you do the math. If the math is a

zero or a negative number it then must be, must be, a defendant's verdict. And that is the application of the law as I've given it to you. . . . So, you must apply that offset how it works. With respect to your second question with respect to [the change], my answer to you is it doesn't change anything. If you go all the way through [the interrogatories] it either is or it isn't a plaintiff's verdict. If you apply an offset and it's zero or negative it isn't [a plaintiff's verdict], it is a defendant's verdict. So, it's not changing anything, it's just going all the way through the interrogatories. So, what I'm going to do at this point based upon what you put in the interrogatories and these questions, to avoid any confusion, I'm going to instruct you to apply the offset as you have and to do the math as you have, and in doing so to render a verdict for the defendant [on] that count.

"So, you would just make the correction and essentially cross off the [$350,000] and make that a defendant's verdict there, sign the . . . interrogatories forms that's still fine because you have the—the negative number, you've done that properly. Just sign the interrogatories form. All you have to do is make the correction on the verdict form, just initial that. But that would be as I'm instructing you on the law, that's how you apply the offset in this case. Okay. So, I'm instructing you to go back and do that. If you have any other questions or that wasn't clear, we'll be waiting here for your knock." After the jury exited the courtroom, the court asked counsel whether they had any comments or concerns based on its instruction, and Attorney Ferranti responded, "Nothing that hasn't already been stated, Your Honor." Shortly thereafter, the jury returned a defendant's verdict on all counts of the complaint consistent with their responses to the interrogatories, and the court accepted the jury's verdict.

The defendant renewed its oral motion for a directed verdict by filing a written motion and supplemental

brief in support of its motion for a directed verdict, seeking to eliminate the jury's award of $350,000 on the ground that there was insufficient evidence to support it. The plaintiff filed a motion to set aside the verdict and for judgment notwithstanding the verdict, in which he claimed that, as a matter of law, the $4,023,338.21 setoff against the $350,000 damages award was improper because (1) the defendant's material breaches of the settlement agreement discharged his obligations under the modified loan agreement, (2) it did not arise out of a debt that was "independent" of the plaintiff's claim under the settlement agreement and should have been raised in a counterclaim, and (3) pursuant to *JPMorgan Chase Bank, National Assn.* v. *Essaghof*, 336 Conn. 633, 249 A.3d 327 (2020), the amount of debt owed could only be finally determined within the context of the foreclosure action. The plaintiff also argued that the trial court erred in not permitting evidence of his damages after he conveyed legal title to the subject property to the SFK Trust in November, 2014.

In addition, the plaintiff filed a motion for additur "to add the amount of $350,000 to the jury's verdict . . . ." In his memorandum of law in support of the motion, he argued that "the jury verdict of zero for the plaintiff on the verdict for material breaches of the settlement agreement [was] based on a mistake of law as to the effect of the defendant's claimed right of setoff. The defendant had no such rights because the defense of setoff could not be asserted in this action because it is not an independent action, and because any obligation to pay the defendant per the terms of the settlement agreement was discharged by the defendant's material breaches."

The defendant objected to each of the plaintiff's posttrial motions, arguing that the plaintiff waived any claim regarding its setoff special defense because he neither

challenged the legal sufficiency of that defense nor took exception to the jury charge. The plaintiff filed a response, arguing that he had not waived his challenge to the setoff special defense because he (1) denied the setoff in his reply to the defendant's special defenses, (2) agreed with the trial court on the first day of trial, when the court indicated that it did not believe the setoff defense was proper, and (3) argued against a setoff when objecting to the defendant's oral motion for a directed verdict. The plaintiff also argued that any exception to the jury charge on setoff was unnecessary because the issue of whether it was a valid defense is a question of law for the court, not one of fact for the jury.

After filing reply memoranda to the defendant's objections, the plaintiff filed a "Motion for Equitable Relief and Consolidation with the Foreclosure Case" (motion to consolidate), which provided in relevant part: "This motion is made in the alternative to the pending motions for mistrial, to set aside, etc. The two cases should be consolidated so that the equitable and legal relief may be considered together [in the foreclosure action]. . . . In fact, a counterclaim was just filed last week (October 19, 2022) in the foreclosure case . . . ." The defendant filed an objection, arguing that the plaintiff's "request would create procedural chaos by consolidating two duplicative sets of claims by [the plaintiff] into one case, with a jury having already adjudicated one of them."

The court held a hearing on the parties' motions on November 7, 2022, and it issued a memorandum of decision denying both parties' motions on December 9, 2022. The court held that the plaintiff had waived any claim that a setoff was improper and, alternatively, that the jury had properly applied the setoff based upon the evidence. Specifically, the court reasoned that "the special defense of setoff was not the subject of a motion

to strike or some other timely challenge or exception either before or during the trial. Also, after discussions about the special defenses, the charge, the interrogatories, and the verdict forms on the record and in a charging conference, this is not a defense which was unknown to the plaintiff. . . . Thus, by not raising an exception to the charge on the record or objections to the special defense of setoff until these posttrial motions, such claims have been waived.

"Further, beyond the issue of waiver, as to the substance of the claims in the plaintiff's motions, there are no grounds to set aside or otherwise reject the verdict. The plaintiff himself testified on the record and freely admitted to the fact that he owes the defendant on the outstanding loan. The jury appears to have accepted the plaintiff's admission/concession that he still owes money [to the defendant] while also accepting the plaintiff's testimony that the gap in time where the second mortgage was not released and that damages resulted to the plaintiff from that breach of the settlement agreement.

"The plaintiff's complaint did not allege or seek to be absolved from the mortgage as a remedy. In fact, both parties through their arguments on various motions were quite aware of the pending foreclosure action . . . . That case is a separate and distinct case that the parties are actively litigating. The defendant has made no claim in this case to seek collection on the foreclosure case either. The plaintiff's argument that the setoff special defense is improper is inconsistent with the law, the facts of the case, and the evidence presented.

"The defendant properly asserted a defense of setoff based on the debt owed to it by the plaintiff, a debt that the plaintiff conceded to in open court, on the record. . . . While it is true that the jury did assign

some damages to count three, the same jury also concluded a specific amount applicable to a setoff consistent with the jury instructions related to the special defense of the defendant. This was not some random or invented number that the jury pulled out of thin air. Rather, the jury took the time to cite the source of the number in the evidence, exhibit GG. This deliberative process is not to be ignored. . . .

"The court did not find its own facts or tell the jury to find facts or make its own calculation of damages or even engage in any math . . . rather, the court used the findings made by the jury in their interrogatories. The court simply reminded the jury to confirm their calculation and the math and to follow the instruction of how to transfer their result to the verdict form with respect to the damages figure and any setoff figure found. If the result of that math was a zero or negative number, the jury was to follow the instructions as to how to apply that result to the verdict form. Once the jury returned to their deliberations and reviewed the calculation, they reasonably and logically concluded that the math result of their findings was a negative number. This is reflected in their own hand where they had written the negative number on the interrogatories form. The jury applied the setoff that it found to apply based on the evidence they found in a manner consistent with the instructions and the charge that had been vetted with the parties in advance and returned a defense verdict as to count three, along with a defense verdict on the other six counts. That verdict was accepted by the court.

"The verdict does not shock the conscience, it is not unreasonable. The jury listened to the evidence and chose to credit the testimony and evidence presented by the plaintiff with respect to the second mortgage breach and the plaintiff's lost opportunities to refinance or sell the property. . . . They then assigned a specific

amount of damages that they found proven. Given the dates, figures, and testimonial evidence submitted, the court cannot determine that these findings are unreasonable to require the verdict be directed or set aside.

"Considering the unchallenged special defense pleading of setoff, the various discussions on the record and the evidence presented at trial, including admissions/ concessions by the plaintiff and various financial documents submitted as full exhibits, it is entirely logical and understandable that the jury would consider a potential setoff. The jury appears to have paid extremely close attention to the evidence in this regard, even citing an exhibit in their interrogatories as the source of their offset amount. . . .

"[T]he totality of the verdict and the answers to interrogatories reflect an appropriate and thoughtful review of the evidence presented and a following of the law given through the charge. . . . By finding certain breaches of the settlement agreement without any damages as well as other breaches with specific damages, the jury did exactly what the parties asked them to do. . . .

"At this juncture, it appears that these experienced litigators and parties seek to undo the result of the litigation that they collectively framed and presented simply because they are displeased with certain aspects of the results. The parties presented their respective cases and made their arguments to the jury. The jury applied the law to the facts found. The jury exhibited a fidelity to their oath that is laudable and there is no basis for their work and their verdict to be undone by this court. As such, the defendant's motions for directed verdict . . . and the plaintiff's motions to set aside the verdict and for judgment notwithstanding the verdict are denied . . . .

"The court finds that the jury made no mistake in the calculation of their final verdict and that the jury applied the setoff, that they found to have been proven, appropriately. As such, there [are] no grounds for the court to grant the plaintiff's motion for additur, and it is denied.

"The court does not consider the motion [to consolidate] to be an appropriate remedy . . . to the . . . motions as suggested by the plaintiff. . . . Retroactively moving to consolidate postverdict and seeking to apply a portion of the verdict as opposed to the entire verdict to another pending case does a disservice to this jury and their complete verdict. As such, the court will decline the invitation to incorporate [the motion to consolidate] into its remedies or rulings on these motions. Rather, that motion . . . will stand alone and be referred to the presiding civil judge for due consideration." (Citations omitted; footnote omitted.)

The court, *Genuario, J.*, held a remote hearing on the plaintiff's motion to consolidate on December 19, 2022. That same day, the court issued a written order denying the motion "for several reasons," though primarily because the motion was "untimely." This appeal followed.[3]

I

On appeal, the plaintiff claims that the trial court erred in denying his motion to set aside the verdict and motion for judgment notwithstanding the verdict "to the extent that the verdict awarded no damages to the plaintiff." More specifically, the plaintiff claims that the court improperly concluded that (1) "the defendant's

---

[3] After filing the appeal, the plaintiff filed a motion for articulation, which Judge Clark denied on March 7, 2023, without comment. The plaintiff filed a motion for review, requesting that this court order the trial court to articulate the bases of its decision denying his posttrial motions. This court granted review but denied the relief requested therein.

claimed setoff could properly be plead[ed] and prosecuted as a defense," (2) the defendant's material breach of the settlement agreement did not discharge the plaintiff from his obligations under the settlement agreement, and (3) "the plaintiff's testimony that he owed the defendant an amount of money on the loan was a judicial admission." We conclude that the plaintiff's claims are unpreserved and, therefore, decline to review them.

Practice Book § 16-20 provides in relevant part: "An appellate court shall not be bound to consider error as to the giving of, or the failure to give, an instruction unless the matter is covered by a written request to charge or exception has been taken by the party appealing immediately after the charge is delivered. Counsel taking the exception shall state distinctly the matter objected to and the ground of objection. . . ." Accordingly, "a party may preserve for appeal a claim that an instruction . . . was . . . defective either by: (1) submitting a written request to charge covering the matter; or (2) taking an exception to the charge as given. . . . Thus, the essence of the preservation requirement is that fair notice be given to the trial court of the party's view of the governing law and of any disagreement that the party may have had with the charge actually given." (Internal quotation marks omitted.) *Champeau* v. *Blitzer*, 157 Conn. App. 201, 207 n.5, 115 A.3d 1126, cert. denied, 317 Conn. 909, 115 A.3d 1105 (2015).

It is well settled that "we will not permit parties to anticipate a favorable decision, reserving a right to impeach it or set it aside if it happens to be against them, for a cause which was well known to them before or during the trial. . . . This same principle requires parties to raise an objection, if possible, when there is still an opportunity for the trial court to correct the proposed error." (Internal quotation marks omitted.) *Tomick* v. *United Parcel Service, Inc.*, 135 Conn. App.

589, 619, 43 A.3d 722, cert. denied, 305 Conn. 920, 47 A.3d 389 (2012), and cert. denied, 305 Conn. 920, 47 A.3d 389 (2012). "Raising that objection as an issue for the first time in a motion to set aside the verdict, obviously does not allow such a possibility because the jury has been excused. When we speak of correcting the claimed error, we mean when it is possible during that trial, not by ordering a new trial. We do not look with favor on parties requesting, or agreeing to, an instruction or a procedure to be followed, and later claiming that that act was improper." *Powers* v. *Farricelli*, 43 Conn. App. 475, 478, 683 A.2d 740, cert. denied, 239 Conn. 954, 688 A.2d 326 (1996); see also *Herrera* v. *Madrak*, 58 Conn. App. 320, 325, 752 A.2d 1161 (2000) ("to preserve for appeal a claimed error in the trial court's charge to the jury, a party must take an exception when the charge is given that distinctly states the objection and the grounds therefor" (internal quotation marks omitted)).

The plaintiff first contends that the court improperly concluded that the setoff defense "could properly be plead[ed] and prosecuted as a defense" because the debt is contingent, and it is not independent of the plaintiff's claims.

In the present case, there is no dispute that the plaintiff was on notice of the defendant's setoff defense because the defendant asserted it in its initial answer and special defenses and specifically requested an instruction on the issue in its request to charge. The plaintiff, however, never sought to challenge the legal sufficiency of that defense by filing a motion to strike in accordance with our rules of practice. Nor did the plaintiff distinctly raise his claim that the setoff defense was invalid because the debt is contingent and arises from the same transaction prior to the submission of the case to the jury.

On the first day of evidence, although the court initially disagreed with the defendant's request to charge on the setoff defense, and the plaintiff's counsel expressed agreement with the court's position at that time, the court made clear that it was expressing its preliminary thoughts only, and the defendant's counsel maintained that he intended to present evidence on that defense at trial. Ultimately, when the defendant's request for a setoff instruction was discussed again during the charging conference, although Attorney Silverstein questioned the fairness of instructing the jury as to setoff while not allowing the plaintiff to assert damages arising from his release of his claims in the two federal lawsuits against the defendant, he did not claim that it was improper because the alleged debt was not independent of the plaintiff's breach of contract claims. In fact, rather than arguing that the setoff was invalid on the ground that it was not independent of the plaintiff's claims, Attorney Silverstein argued that setoff was improper because the foreclosure action is a separate proceeding. See, e.g., *State* v. *Alvarez*, 209 Conn. App. 250, 252 n.2, 267 A.3d 303 (2021) (when party makes different argument on appeal than at trial, claim is unpreserved), aff'd, 346 Conn. 530, 292 A.3d 1 (2023).

Furthermore, when discussing the interrogatories that clearly set forth how the jury was to apply any setoff based on their answers, the plaintiff's counsel again failed to object to the setoff on the ground that it was not independent of the plaintiff's claims. In fact, not only did the plaintiff's counsel not object to the inclusion of the setoff defense in the interrogatories, but Attorney Ferranti noted his partial agreement with the framing of that issue when he stated: "If the difference is zero, you must enter a verdict—a verdict in favor of the defendant, *is fine*. I do believe a negative number would still be valid because it would be a setoff

even though it doesn't [rise] above what is owed, that number should be subtracted from what is owed." (Emphasis added.)

Accordingly, the plaintiff had every opportunity to challenge the validity of the defendant's setoff defense, either by filing a motion to strike or by objecting to the charge and interrogatories on that basis, but he failed to do so. Instead, he waited until the jury had reached its verdict before claiming that the defendant's setoff was improper because it did not arise from an independent transaction. "Raising that objection as an issue for the first time in a motion to set aside the verdict, obviously does not allow [the trial court to correct the proposed error] because the jury has been excused." *Powers* v. *Farricelli*, supra, 43 Conn. App. 478.

Although the plaintiff contends that the court improperly concluded that he waived his challenge to the setoff defense, during oral argument before this court, his appellate counsel conceded that, because the plaintiff failed to take an exception to the inclusion of either the setoff charge or the setoff interrogatories, his claim challenging that defense is unpreserved. Consequently, because the plaintiff did not preserve his challenge to the setoff, we decline to review it on appeal. See, e.g., *Barrese* v. *DeFillippo*, 45 Conn. App. 102, 104, 694 A.2d 797 (1997) ("Our review of the record reveals that the defendant first raised the claim of inconsistency in his motion to set aside the verdict. The defendant never undertook to require the plaintiff to choose between negligence and intentional battery and assault, did not except to the jury charge, and, in fact, submitted jury verdict forms and interrogatories based on the plaintiff's allegations of both negligence and intentional tort. Because the defendant's claim was not properly preserved, we decline to review it." (Footnote omitted.)).

Likewise, the plaintiff failed to preserve his claim that the defendant's material breach of the settlement

agreement necessarily discharged his obligations under the loan modification agreement by failing to submit a written request to charge or proposed jury interrogatories on the issue and by agreeing to the submission of interrogatories to the jury that plainly allowed it to find both that the defendant materially breached the settlement agreement and that the plaintiff was indebted to the defendant pursuant to his loan obligations. The interrogatories specifically required that the jury determine whether the defendant's alleged breach of the settlement agreement was "a material breach" and, if the plaintiff proved his damages as to that material breach, whether "the defendant [had] proven that the plaintiff owes it mon[eys] due to the plaintiff's ongoing default in his loan obligations." If the plaintiff believed that the jury's finding that the defendant's material breach of the settlement agreement necessarily excused his "ongoing default in his loan obligations," then he should have distinctly raised that claim by objecting to those interrogatories. Our review of the record reveals that the plaintiff, however, expressed no disagreement with this portion of the interrogatories, and "[w]e may presume from the plaintiff's repeated failure to object to the interrogatories that he agreed to their content and their submission to the jury." *Mokonnen* v. *Pro Park, Inc.*, 113 Conn. App. 765, 770–71, 968 A.2d 916 (2009). Accordingly, we decline to review this unpreserved claim as well.[4]

---

[4] The plaintiff also claims that, "[b]y instructing the jury to mark the damages award to zero, the court impermissibly found a fact that was within the province of the jury because it effectively reversed the jury's decisions that the defendant's breaches were material." The plaintiff argues that, "although the court instructed the jury to set off the plaintiff's damages according to what it believed to be the legal effect of the defendant's claim for setoff, the actual legal effect of the material breach found by the jury compelled the court to conclude that the plaintiff's obligations under the modified mortgage were discharged. By instructing the jury to the contrary, the court effectively negated their findings as to material breaches of the defendant." Although the plaintiff briefed this subclaim separately, he simply restates his unpreserved challenges to the court's setoff charge and the related interrogatories, which we decline to review.

Finally, the plaintiff claims that the court improperly concluded that his testimony that he owed the defendant more than $3 million was a judicial admission that supported the jury's finding as to the defendant's setoff because that admission is a "legal [conclusion] which . . . a layman could not be qualified to make." The problem, however, is that his counsel neither objected to the questions about the debt posed by the defendant's counsel nor moved to strike the plaintiff's responses as to the amount of the debt. As a result, his claim is unreviewable. See *State* v. *Heriberto M.*, 116 Conn. App. 635, 641, 976 A.2d 804 ("[t]he defendant's failure to object to the admission of [the] testimony [at issue] renders his claim unpreserved and unreviewable"), cert. denied, 293 Conn. 936, 981 A.2d 1080 (2009).

II

Next, the plaintiff claims that the court improperly precluded him from presenting evidence of damages incurred after November, 2014, when he transferred title to the property to the SFK Trust. We conclude that the plaintiff's evidentiary claim is not reviewable.

"A trial court may entertain a motion in limine made by either party regarding the admission or exclusion of anticipated evidence. . . . The judicial authority may grant the relief sought in the motion or such other relief as it may deem appropriate, may deny the motion with or *without prejudice to its later renewal*, or may reserve decision thereon until a later time in the proceeding. Practice Book § 42-15. This court has said that [t]he motion in limine . . . has generally been used in Connecticut courts to invoke a trial judge's inherent discretionary powers to control proceedings, exclude evidence, and prevent occurrences that might unnecessarily prejudice the right of any party to a fair trial." (Emphasis in original; internal quotation marks omitted.) *State* v. *Patel*, 186 Conn. App. 814, 843, 201

A.3d 459, cert. denied, 331 Conn. 906, 203 A.3d 569 (2019).

Practice Book § 60-5 provides in relevant part: "In jury trials, where there is a motion, argument, or offer of proof or evidence in the absence of the jury, whether during trial or before, pertaining to an issue that later arises in the presence of the jury, *and counsel has fully complied with the requirements for preserving any objection or exception to the judge's adverse ruling* thereon in the absence of the jury, the matter shall be deemed to be distinctly raised at the trial for purposes of this rule without a further objection or exception provided that the grounds for such objection or exception, and the ruling thereon as previously articulated, remain the same. . . ." (Emphasis added.)

Consistent with these rules of practice, it is well settled that an appellate "court is not bound to consider claims of law not made at the trial. . . . In order to preserve an evidentiary ruling for review, trial counsel must object properly. . . . In objecting to evidence, counsel must properly articulate the basis of the objection so as to apprise the trial court of the precise nature of the objection and its real purpose, in order to form an adequate basis for a reviewable ruling. . . . *Once counsel states the authority and ground of* [*the*] *objection, any appeal will be limited to the ground asserted.* . . . [T]hese requirements are not simply formalities. [A] party cannot present a case to the trial court on one theory and then seek appellate relief on a different one . . . . For this court to . . . consider [a] claim on the basis of a specific legal ground not raised during trial would amount to trial by ambuscade, unfair both to the [court] and to the opposing party. . . . Thus, because the essence of preservation is fair notice to the trial court, the determination of whether a claim has been properly preserved will depend on a careful review of the record to ascertain whether the claim on

appeal was articulated below with sufficient clarity to place the trial court on reasonable notice of that very same claim." (Citations omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Miranda*, 327 Conn. 451, 464–65, 174 A.3d 770 (2018).

As previously noted in this opinion, before trial, the defendant filed a motion in limine seeking to preclude the plaintiff from presenting evidence of damages he allegedly incurred after November, 2014, when he was no longer the owner of the subject property. The court granted the motion in limine without prejudice on May 20, 2022. On appeal, the plaintiff claims that the court erred in granting the defendant's motion in limine "despite the representation of [the] plaintiff's counsel that the trust agreement allows the plaintiff to access the equity in the property and therefore should be admitted as an exhibit . . . [and] the plaintiff testified that under the terms of the trust, he still had access to the funds of the trust and received reimbursements from the trust from the rental of the property . . . . In fact, [the] defendant's counsel admitted as much by eliciting this testimony on cross examination . . . .

"The plaintiff therefore did suffer damages after the conveyance of legal title to the trust in November, 2014. The beneficiary of a trust has an equitable interest or title that is legally cognizable . . . . [T]he plaintiff therefore should have been permitted to introduce evidence that the damages to his credit arising from the defendant's failure to release the lis pendens and second mortgage continued past the date of conveyance to the trust and that the plaintiff's interest in the property gave him the ability to sell or refinance the property or rent it. In addition, he should have been able to show evidence that the damage to his credit prevented him from obtaining gainful employment." (Citations omitted.)

Initially, we note that the record is bereft of any arguments that the plaintiff made in opposition to the

defendant's motion in limine because he neither filed a written objection nor requested the May 20, 2022 transcript of the hearing on that motion for his appeal. Accordingly, the record does not reflect that the plaintiff distinctly raised the claim that he now advances on appeal in opposition to the defendant's motion in limine. See Practice Book § 61-10 (a) ("[i]t is the responsibility of the appellant to provide an adequate record for review"); Practice Book § 63-8 (a) ("[w]ithin ten days of filing an appeal, the appellant shall . . . order . . . the transcript of the parts of the proceedings not already on file that the appellant deems necessary for the proper presentation of the appeal").

Moreover, although the plaintiff attempts to marshal the purportedly "uncontroverted and admitted evidence" as to the plaintiff's alleged "beneficial ownership" of the property to support his claim on appeal that the court should have allowed him to present "evidence of [his] rights under the trust and damages suffered after the conveyance," he fails to identify any attempt to seek a definitive ruling from the court on the basis of that evidence. Indeed, in arguing that the court granted the motion in limine "despite the representation of the plaintiff's counsel" as to the nature of the trust, the plaintiff relies on a representation that was made on the first day of trial, more than one month *after* the court granted the defendant's motion in limine. Specifically, the plaintiff directs this court's attention to the following exchange between the trial court and the plaintiff's counsel before the start of trial:

"[Attorney Silverstein]: [F]rom my understanding, you want to limit this case from 2011 when it was breached to today because we're claiming the breach is ongoing. Fair enough?

"The Court: Fair enough. Also understanding the transfer of property in 2014 and that motion in limine.

"[Attorney Silverstein]: We haven't really reached that on—are you saying that 2012 to 2014 is where I'm—my damages end?

"The Court: There's a line at [2014], *at the moment* based upon the transfer of property based on the prior rulings, *so as we sit here right now, that is a line.*

"[Attorney Silverstein]: Right.

"The Court: With respect to damages.

"[Attorney Silverstein]: But with the understanding that when we produce what we intend to produce, the trust agreement which is no different than the others, other than different characters, and if it allows him to access the equity or sell the property on behalf of the trust, then that's a completely different parameter.

"The Court: I'm not sure it's a completely different parameter, but depending on how the evidence goes—

"[Attorney Silverstein]: Well—

"The Court: —we may need to revisit certain dates and time and whatnot, but *based on where we are today and based on the motions and the rulings*, there was a transfer of the property, I believe it was November of 2014—

"[The Defendant's Counsel]: Yes.

"The Court: —and so, at the moment, there is no discussion or evidence of damages associated with the ownership of that property by [the plaintiff] from that transfer forward because the entity it was transferred to is not a party to this case.

"[Attorney Silverstein]: But I don't want to run afoul to the court's ruling because it was my intention to argue on opening that should you hear evidence that the damages are ongoing after this issue of whether the property still remained in the condition where [the

plaintiff] could access it, that is something that you can also consider, but only if the judge—

"The Court: Well, there won't be an opening, so we won't have that problem.

"[Attorney Silverstein]: I'm not going to be able to open?

"The Court: No. But as we get to evidence, I think as we discussed in the motion in limine, the—to the extent there's damages that occurred between breach and the sale in 2014, that any of those damages continue on. I think that's fair game. *But to the extent that there's damages associated with the property and the owner of that property post the transfer of that property, that's where the cut off would be pursuant to those rulings as we sit here right now.*

"[Attorney Silverstein]: Your Honor, with all due respect, you know, I know that you are concerned that I will deviate from your order, but I can assure you that over lunchtime, I confined myself just to what happened in 2011 on. I will cut it off at 2014 with just a simple statement that the judge may instruct you that those damages that we intend to show my client incurred from 2011 to 2014 may in fact be ongoing. That was all I was gonna say. . . . I think it would be helpful." (Emphasis added.)

This exchange demonstrates that the plaintiff's counsel never sought "a definitive ruling [when the evidence was offered at trial] in [compliance] with the requirements of our court rules of practice for preserving his claim of error . . . ." (Internal quotation marks omitted.) *State* v. *Patel*, supra, 186 Conn. App. 844. To the contrary, it appears to demonstrate counsel's acquiescence to the court's preliminary "without prejudice" ruling on the motion in limine, as counsel ends the exchange by stating, "I will cut it off at 2014, with just

a simple statement that the judge may instruct you that those damages that we intend to show my client incurred from 2011 to 2014 may in fact be ongoing."

Consequently, because the record does not reflect that the plaintiff distinctly raised his evidentiary claim in opposing the defendant's motion in limine before trial or at any point during the trial, we conclude that the plaintiff has not preserved his claim for appellate review. See *State* v. *Patel*, supra, 186 Conn. App. 844 ("[h]aving not taken advantage of the court's offer and having not objected at the time the evidence was offered, the defendant has not preserved this evidentiary issue for appellate review"). Therefore, we will not review it.

III

The plaintiff also claims that the court improperly denied his motions to set aside the verdict as inadequate and for additur. The plaintiff argues that "[t]he jury's determination that the plaintiff's damages for breach of the settlement agreement were only $350,000 was clearly against the weight of the evidence" and that the court "should have found the verdict to be so clearly against the weight of the evidence in the case as to indicate that the jury did not correctly apply the law . . . and set aside the verdict and grant a new trial as to any consequential and incidental damages in addition to the $350,000 that the jury found for the plaintiff . . . ." (Internal quotation marks omitted.) We conclude that the court did not abuse its discretion in denying the plaintiff's postverdict motions to set aside the verdict as inadequate and for additur.

In considering a motion to set aside the verdict and to order an additur, the trial court must view the evidence in the light most favorable to sustaining the verdict. See *Maldonado* v. *Flannery*, 343 Conn. 150, 166, 272 A.3d 1089 (2022). "The question for the trial court

is not whether the jury exercised poor judgment but, instead, whether the jury's damages award lies outside the range of reasonableness; mere disagreement is not enough to warrant judicial intervention. For this reason, [t]he ultimate test [that] must be applied to the verdict by the trial court is whether the jury's award falls somewhere within the necessarily uncertain limits of just damages or whether the size of the verdict so shocks the sense of justice as to compel the conclusion that the jury [was] influenced by partiality, prejudice, mistake or corruption. . . . If the verdict cannot be explained rationally, then the trial court may presume that it is tainted by improper considerations. . . .

"We review a decision of the trial court to set aside the jury's verdict and to order an additur for an abuse of discretion. . . . A trial court's decision to set aside a verdict and to order an additur is entitled to great weight and every reasonable presumption should be given in favor of its correctness. . . . The trial court, having observed the trial and evaluated the testimony firsthand, is better positioned than a reviewing court to assess both the aptness of the award and whether the jury may have been motivated by improper sympathy, mistake, partiality, or prejudice. . . .

"The action of a trial judge is no less entitled to weight when he sets aside a verdict, than when he refuses to set it aside; and for the same reasons. He has seen the witnesses, heard their testimony, observed their demeanor on the witness stand, their manner and bearing, their intelligence, character and means of knowledge. And if while all this is fresh in his mind he sets aside a verdict, great weight would naturally be given to his action. . . .

"[O]ur case law involving trial court rulings on motions to set aside a jury's verdict and award of damages as excessive or inadequate . . . reflects a firm

commitment to the belief that we should give great weight to the trial court's exercise of discretion regarding the reasonableness of the jury's verdict." (Citations omitted; footnote omitted; internal quotation marks omitted.) Id., 166–69.

In the present case, in returning a defendant's verdict on the second count of the plaintiff's complaint, the jury found that the defendant's failure to release the lis pendens until March 2, 2012, constituted a material breach of the settlement agreement but also found that the plaintiff failed to prove that that breach caused him to incur damages due to "negative references with regard to his credit and good name," lost employment opportunities, the loss of "a potential favorable refinance," and lost potential sale of the property. As to the third count, the jury found that the defendant's failure to release the second mortgage until April 21, 2014, constituted a material breach of the settlement agreement and that the plaintiff had proven that he suffered $350,000 in damages due to "lost potential favorable refinance" and "lost potential sale of the property," but rejected his claims for damages for negative references to his credit and good name and for lost employment opportunities.

In denying the defendant's postverdict motions seeking additur, the court specifically noted that "[t]he jury listened to the evidence and chose to credit the testimony and evidence presented by the plaintiff with respect to the second mortgage breach and the plaintiff's lost opportunities to refinance or sell the property. . . . They then assigned a specific amount of damages that they found proven. Given the dates, figures, and testimonial evidence submitted, the court cannot determine that these findings are unreasonable to require the verdict be directed or set aside. . . .

"[T]he totality of the verdict and the answers to interrogatories reflect an appropriate and thoughtful review

of the evidence presented and a following of the law given through the charge. . . . By finding certain breaches of the settlement agreement without any damages as well as other breaches with specific damages, the jury did exactly what the parties asked them to do." (Citations omitted.)

On appeal, the plaintiff argues that "the principal amount of the [modified] loan was $2.9 million, with interest to be charged at 1 percent for the first three years and then 5.12 percent for the remainder of the life of the loan . . . . The monthly mortgage payments would, therefore, rise from $7332 to $13,636 in November, 2014, an increase of $6304 per month, $75,648 per year, and an increase of $2,792,672 over the 443 remaining payments under the term of the mortgage . . . . The increase in payments that would render the plaintiff unable to meet the monthly mortgage payments and the fact that the failure to release the second mortgage prevented a refinance for a more affordable mortgage resulted in damage that is far greater than the $350,000 damages that the jury found." (Citations omitted.) We are not persuaded.

Although the plaintiff focuses on the increase in the mortgage payments as of November, 2014, as the primary basis for the damages he suffered, he ignores the fact that, because he transferred the property to the SFK Trust on November 3, 2014, the court instructed the jury that it could "only award amounts for damages incurred related to the property while [the plaintiff] was actually in title of the property, i.e., before November 3, 2014 . . . ." Given that limited time period during which the plaintiff suffered damages due to his inability to refinance or sell the property, the jury's award of $350,000 "falls somewhere within the necessarily uncertain limits of just damages" and, therefore, that amount does not "compel the conclusion that the jury [was]

influenced by partiality, prejudice, mistake or corruption." (Internal quotation marks omitted.) *Maldonado* v. *Flannery*, supra, 343 Conn. 166. We recognize that the plaintiff believes that $350,000 "is clearly inadequate" to compensate him for "the millions of dollars that [he] could have saved, as well as [for] the prevention of the loss of his home." "In the absence of evident mistakes or partiality, however, we defer to the jury's judgment . . . ." *Munn* v. *Hotchkiss School*, 326 Conn. 540, 579, 165 A.3d 1167 (2017). In short, because there is a reasonable basis in the evidence for the jury's verdict, the trial court did not abuse its discretion by denying the plaintiff's motions to set aside the verdict and for additur.

IV

Finally, the plaintiff claims that the court, *Genuario, J.*, improperly denied his motion to consolidate this breach of contract action with the pending foreclosure action. We disagree.

We review a court's ruling on a motion to consolidate under the abuse of discretion standard. See *Valentine* v. *LaBow*, 95 Conn. App. 436, 453, 897 A.2d 624, cert. denied, 280 Conn. 933, 909 A.2d 963 (2006). In the absence of "a case of manifest abuse," the court's "exercise of that discretion will not be reversed on appeal . . . ." (Internal quotation marks omitted.) Id.

In denying the plaintiff's motion to consolidate in the present case, the court explained that "this case has already been tried before a jury and a verdict has been rendered. Postverdict motions have been filed and decided by the trial judge. . . . Thus, the purpose of consolidation as set forth in [Practice Book §] 9-5 (a) cannot be achieved, since this case has already been tried and the foreclosure action has not yet been tried. The motion is quite untimely. The plaintiff knew of [the] foreclosure action, at the time he chose to file this

action, at the time he claimed this action for the jury on [July 16, 2021], and at the time this case was tried in the summer of 2022. He did not move to consolidate until after this case had been tried and postverdict motions had been filed. The motion is therefore grossly untimely and serves little purpose in either promoting judicial economy or avoiding contradictory results. Any meaningful attempt to accomplish either would have required, at a minimum, this motion to have been filed before trial. The court sees no purpose in consolidating these cases at this time. Indeed, the court believes that such belated consolidation would only promote confusion in the adjudication of these cases. Finally, the court observes that the motion to consolidate was not filed in the foreclosure action as required by Practice Book § 9-5 (b). For all these reasons, the motion to consolidate is denied." (Citation omitted.)

On appeal, the plaintiff argues that the court abused its discretion in denying his motion to consolidate because: "(a) the trial court mischaracterized the motion to consolidate as a motion to consolidate the case based on the verdict rendered and not on the basis of a new trial that would be granted after reversal on appeal; (b) the two cases contained the same parties; (c) they arose out of the same transaction; (d) the ends of substantial justice would be promoted by having the plaintiff's claims adjudicated in connection with the foreclosure; and (e) judicial economy and the avoidance of inconsistent results would be promoted by the consolidation of the cases."

The plaintiff's arguments ring hollow given that, *after* the defendant initiated the foreclosure action, the plaintiff initiated the underlying action instead of asserting his breach of contract claims in a counterclaim in the foreclosure action. Moreover, the court properly considered the belated nature of the plaintiff's motion to consolidate, as well as the futility of doing so after a

verdict had been returned and after Judge Clark had denied the plaintiff's motion for a new trial. See *Valentine* v. *LaBow*, supra, 95 Conn. App. 454 (finding no abuse of discretion as to denial of defendant's motion to consolidate when "her attempt at consolidation came at the eleventh hour of an action that ha[d] been ongoing since 1979 and would serve only to further delay its resolution"). In light of the procedural history of the case, and given Judge Clark's denial of the plaintiff's postverdict motions, the court's denial of the postverdict motion to consolidate was not an abuse of its discretion.

The judgment is affirmed.

In this opinion the other judges concurred.